UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DORIS TRUITT,**

       **Plaintiff,**            **CIVIL ACTION NO. 16-10033**

       **v.**                      **DISTRICT JUDGE NANCY G. EDMUNDS**

**COMMISSIONER OF**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Doris Truitt seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to Social Security benefits for her physical impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 13).  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 2.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.**      **RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 11) be **GRANTED**, Defendant's Motion for Summary Judgment (docket no. 13) be **DENIED**, and the decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II. PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on April 30, 2013, alleging that she has been disabled since February 24, 2013. (TR 135-48.) The Social Security Administration denied Plaintiff's claims on August 7, 2013, and Plaintiff requested a *de novo* hearing. (TR 88-102.) On September 2, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Gregory Holiday. (TR 23-65.) In an October 9, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing past relevant work as well as a significant number of other jobs in the national economy. (TR 9-18.) The Appeals Council declined to review the ALJ's decision (TR 1-4), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court. (Docket nos. 11, 13.)

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 11 at 6-9), Defendant (docket no. 13 at 3-13), and the ALJ (TR 15-17) each set out detailed, factual recitations regarding Plaintiff's medical record and the hearing testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record, with one exception, which is discussed below. Therefore, the undersigned incorporates the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017; that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 24, 2013; and that Plaintiff suffered from the following severe impairments: osteoarthritis in the right shoulder, cervical disc disease, ulnar nerve palsy and possible rotator cuff injury. (TR 14-15.) Next, the ALJ found that Plaintiff's impairments, either individually or when combined, did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 15.) The ALJ then found that Plaintiff had the following Residual Functional Capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light exertional work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: [s]he requires a sit/stand opinion up to four times an hour; is limited to only frequent feeling, gross manipulation, and fully extended reaching with the right upper extremity; can only occasionally climb ladders or crawl[]; cannot constantly rotate, flex, or extend the neck; cannot repetitively push or pull with the right upper extremity; cannot perform overhead reaching, handling, or above shoulder lever reaching with the right upper extremity; cannot climb ropes and scaffolds; and must avoid even moderate exposure to hazards such as dangerous machinery or unprotected heights.

(TR 15-16.) Subsequently, in reliance on the testimony of the Vocational Expert (VE), the ALJ determined that Plaintiff was capable of performing her past work as a telephone solicitor and a cashier. (TR 17.) In the alternative, the ALJ found that there are a significant number of other jobs in the national economy to which Plaintiff can be expected to successfully adjust. (TR 17-18.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from February 24, 2013, through the date of the ALJ's decision. (TR 18.)

V.   **LAW AND ANALYSIS**

   A.   **Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining

3

whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)   Plaintiff was not presently engaged in substantial gainful employment; and

(2)   Plaintiff suffered from a severe impairment; and

4

>   (3)   the impairment met or was medically equal to a "listed impairment;" or
>
>   (4)   Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

   **C.   Analysis**

   The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is

reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because the ALJ failed to obtain an updated medical opinion in light of the results of a December 2013 MRI, which, Plaintiff argues, "support[s] . . . a possible finding of disability pursuant to Listing 1.04." (Docket no. 11 at 11-13.) Plaintiff also alleges error with the ALJ's formulation of Plaintiff's RFC. Specifically, Plaintiff alleges 1) that "there is absolutely no support" for the RFC where there are no "RFC Assessments from any physicians whatsoever;" and 2) that the ALJ failed to comply with Social Security Ruling 96-8p regarding RFC assessments because the ALJ's RFC assessment "is simply conclusory and does not contain any rationale or reference to supporting evidence," and because the ALJ "failed to include the required 'function-by-function analysis.'" (*Id.* at 14-16.)

As a preliminary matter, Defendant points out that in support of her arguments, Plaintiff relies, in part, on medical evidence that was provided to the Appeals Council but *not* the ALJ. (TR 290-307.) Such reliance is improper for the purpose of determining whether a sentence-four remand is appropriate where, as here, the Appeals Council declined to review the ALJ's decision. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) ("[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision."); *see also* TR 1-5. This evidence also cannot be relied upon to support a sentence-six remand in this case, because the evidence—treatment records from December 15, 2013 through July 2014—was available to Plaintiff at the time of the administrative hearing on September 2, 2014, and therefore is not

6

"new." *See* 42 U.S.C. § 405(g); *see also Cline*, 96 F.3d at 148 (District court can consider "new and material" evidence when considering a sentence-six remand.). The undersigned therefore will not consider this evidence when reviewing the ALJ's decision, which is contained within exhibit 11F of the administrative record. (TR 290-307.)

Nevertheless, if the Court decides to adopt this Report and Recommendation, the ALJ "may properly consider the additional evidence on remand." *McKeel v. Comm'r of Soc. Sec.*, No. 14-cv-12815, 2015 WL 3932546, at *7 (E.D. Mich. June 26, 2015) (citing *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 175 (6th Cir. 1994)).

*1. Updated Medical Opinion/Step 3 Determination*

Plaintiff's first argument concerns an MRI she received in December 2013 from the Detroit Medical Center and treatment records from Michigan Spine and Brain Surgeons ("MS&BS") following the MRI. (TR 285-88.) The ALJ had both records before him during the administrative hearing. (TR 22.) Plaintiff argues that the MRI and the MS&BS treatment records support a finding of disability under listing 1.04, "disorders of the spine." (Docket no. 11 at 13.)

The state agency physician, Dr. Stephen E. Wood, gave his opinion that Plaintiff was not disabled in August 2013, and therefore did not consider the MRI or the treatment records from MS&BS. (TR 73.) When giving his opinion, Dr. Wood only considered listing 1.02, "major dysfunction of a joint." (TR 70.) Dr. Wood's opinion is the only medical expert opinion in the record concerning whether Plaintiff's conditions meet or are medically equivalent to a listing. This is significant because, while the ALJ "is responsible for deciding the ultimate question whether a listing is met or equaled," SSR 96-6p, 1996 WL 374180, at *3, "an appointed expert

7

must provide the equivalence opinion." *Moran v. Comm'r of Soc. Sec.*, 40 F. Supp.3d 896, 923 (E.D. Mich. 2014).

Because Dr. Wood provides the only expert medical opinion and he only considered listing 1.02, and because (in Plaintiff's opinion) the MRI and MS&BS records support a finding of disability under listing 1.04, Plaintiff argues that the ALJ should have sought an updated medical opinion before deciding that Plaintiff was not disabled.

The parties agree that "an ALJ must seek an updated opinion on the issue of medical equivalence where medical evidence is received that may change a consultant's finding that an impairment is not equivalent to a listing." *Roberts v. Colvin*, No. 14-13194, 2015 WL 5432388, at *4 (E.D. Mich. July 23, 2015) (citing *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 723 (6th Cir. 2012)). In order for the ALJ's decision to be erroneous based upon his failure to seek an updated medical opinion, Plaintiff has to show that the MRI and the MS&BS treatment records did, in fact, "call[] for an updated opinion." *See Kelly v. Comm'r of Soc. Sec.*, 314 Fed. App'x 827, 830 (6th Cir. 2009).

> The radiology report from Detroit Medical Center states that the MRI shows:
>
> 1. Disc osteophyte complexes causing moderate compression of the spinal cord without cord signal abnormality at C5-6 and C6-7.
> 2. Smaller disc osteophyte complexes with lesser degrees of cord distortion at C3-4 and C4-5.
> 3. Moderate to severe bilateral neural foraminal narrowing at C5-6 and C6-7 secondary to uncovertebral osteophytes and facet arthropathy.
> 4. Minimal to mild left neural foraminal narrowing at C3-4 and C4-5.

(TR 289.) Plaintiff also focuses on the fact that the MS&BS records contain a diagnosis from Dr. Boyd Richards that plaintiff has "cervical disc disease w/myelopathy." (TR 287.)

Defendant argues that the MRI and MS&BS records did not require the ALJ to seek an updated opinion because Dr. Wood "already had in his possession x-ray evidence of foraminal

stenosis, including mild neural foraminal narrowing of the cervical spine, at C5-6 and C6-7, which were the same cervical spine segments as noted in the MRI report cited by Plaintiff." (Docket no. 13 at 19.) Defendant further argues that the new evidence "does not implicate the required elements of Listing 1.04A,"[1] because it does not show that Plaintiff has "motor loss . . . accompanied by sensory or reflex loss." (Docket no. 13 at 19-20 (quoting 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04A).) Defendant emphasizes that other evidence in the record, including treatment records from Henry Ford Hospital in May 2013, shows that Plaintiff had "motor intact in all extremities, sensation normal, normal reflexes, gait normal," and did not have "focal neurologic symptoms that would suggest she needs urgent neurosurgical evaluation or treatment." (TR 248.)

Defendant's arguments, though thoughtful and well-made, somewhat miss the mark. True, Dr. Wood already had some evidence showing "mild" foraminal narrowing of Plaintiff's spine at C5-6, but the MRI shows "moderate to severe" foraminal narrowing. (TR 289.) More importantly, the fact remains that Dr. Wood did not consider whether Plaintiff's impairments implicated listing 1.04A at all. And, while the MRI and MS&BS records might not definitively establish that Plaintiff's impairments *meet* the requirements of listing 1.04A, the ALJ needs an expert opinion to determine that Plaintiff's impairments do not *medically equal* listing 1.04A. *See McKeel v. Comm'r of Soc. Sec.*, No. 14-cv-12815, 2015 WL 3932546, at *10 (E.D. Mich. June 26, 2015) (noting that "'longstanding policy requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence of the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and

---

[1] Defendant also accurately points out that A is the only possibly relevant subsection of listing 1.04, because Plaintiff does not present any evidence of spinal arachnoiditis (required for subsection B), and does not allege any issues with her lumbar, or lower, spine (required for subsection C). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, listing 1.04.

given appropriate weight,'" and collecting cases). Moreover, the undersigned notes that nowhere in his decision does the ALJ actually discuss Plaintiff's reflexes or sensory functions as justifying a determination that Plaintiff does not meet the listing at 1.04A. Indeed, he does not discuss the requirements of listing 1.04, listing 1.02, or Dr. Wood's opinion in any detail. His Step 3 analysis is limited to the following: "The record does not contain the requisite clinical and objective findings that would meet or equal the musculoskeletal or neurological Listings at sections 1.00 and 11.00, respectively, in Appendix 1, Subpart P, Regulations No. 4." (TR 15.)

The undersigned acknowledges that elsewhere in his opinion, the ALJ noted, "X-rays identified only a moderate amount of osteoarthritis at the AC joint," that Plaintiff's "shoulder was tender on examination and movement was limited, but there were no clinical findings of nerve compromise," and "no electrodiagnostic studies which could detect a radiculopathy, neuropathy, or plexopathy." (TR 16.) This brief discussion sheds light on the reasoning behind the ALJ's finding that Plaintiff did not meet listing 1.02, which requires "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s)," *see* 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.02, especially when considered in conjunction with Dr. Wood's opinion. It does not, however, clarify why Plaintiff's impairments do not medically equal listing 1.04A, especially when the record contains no medical expert opinion on that listing.

Finally, while the ALJ finds that the MRI did not "show signal abnormalities, indicative of a myelopathy" (TR 16), the MS&BS treatment records actually state that Plaintiff was diagnosed at MS&BS with "cervical disc disease w/ myelopathy." (TR 287.) The ALJ gives no

10

reason for rejecting this diagnosis. The ALJ also gives no reason for declining to seek a medical opinion regarding listing 1.04A in light of the MRI and the MS&BS treatment records.

The ALJ "need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ. If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. App'x 639, 641 (6th Cir. 2013) (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). The MRI and the MS&BS records clearly do show significant issues with Plaintiff's spine, including findings that "[t]he spinal cord is distorted at several levels secondary to degenerative changes," and that "[t]here is loss of the normal lordotic curvature of the cervical spine" and "moderate to severe narrowing of the C5-6 and C6-7 intervertebral disc spaces." (TR 288-89.) The ALJ does not specifically address these findings, instead concluding without discussion that Plaintiff's "file does not verify significant nerve trauma to [her] . . . cervical spine." (TR 16.)

In light of this evidence, and in the absence of any expert opinion regarding listing 1.04A, the undersigned concludes that the ALJ erred in not seeking an updated medical expert opinion before determining that Plaintiff was not disabled. In short, the MRI and the MS&BS treatment records "call[] for an updated opinion" which includes a consideration of listing 1.04A. *See Kelly v. Comm'r of Soc. Sec.*, 314 Fed. App'x 827, 830 (6th Cir. 2009). Without such evidence, the undersigned cannot find that the ALJ's decision is supported by substantial evidence. Accordingly, it is recommended that this case be remanded with instructions for the ALJ to seek an updated medical expert opinion on listing 1.04A, and then to re-evaluate whether Plaintiff's impairments meet or medically equal that listing.

 2. *The ALJ's RFC Assessment*

Plaintiff also challenges the ALJ's RFC assessment on several grounds. She argues that "there is absolutely no support for the ALJ's RFC assessment" because "the record is devoid of any RFC Assessments from any physicians," and that the RFC assessment fails to comply with Social Security Ruling 96-8p because it "does not contain any reference to the supporting evidence" or include a "'function-by-function' assessment." (Docket no. 11 at 14-18.)

Defendant points out that Dr. Wood, the state agency physician, did perform a Physical Residual Functional Capacity Assessment on Plaintiff. (Docket no. 13 at 22 (citing TR 71-73, 81-83)). Alternatively, Defendant argues that ALJs are not required to rely "seek out a physician's medical opinion" when formulating a claimant's RFC. (Docket no. 13 at 22-23 (citing, among other cases, *Brown v. Comm'r of Soc. Sec.*, 602 Fed. App'x 328, 331 (6th Cir. 2015)). Defendant further argues that the ALJ "considered the medical evidence regarding Plaintiff's right shoulder and neck, citing relevant medical evidence of record," and "accounted for . . . Plaintiff's hearing testimony" by limiting Plaintiff to work that does not require "repetitive pushing or pulling with the right upper extremity; . . . overhead reaching, handling, or reaching above shoulder level with the right upper extremity; . . . climbing of ropes and ladders; [or] even moderate exposure to hazards such as dangerous machinery or unprotected heights." (Docket no. 13 at 23-26; TR 17.)

The undersigned has concluded that a remand is necessary for the ALJ to seek an updated medical expert opinion regarding whether Plaintiff's impairments medically equal listing 1.04A, in light of the December 2013 MRI and the MS&BS treatment records. A new medical expert opinion and consideration of listing 1.04A may lead to a different residual functional capacity assessment in this case, especially considering that Plaintiff will likely present the treatment records from December 2013 through August 2014, which she previously presented to the

Appeals Council but not the ALJ (Exhibit 11F to the transcript, discussed above). As such, the undersigned will not resolve the parties' arguments concerning the ALJ's RFC assessment at this time.

## VI.     CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 11) be **GRANTED**, Defendant's Motion for Summary Judgment (docket no. 13) be **DENIED**, and the decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this Report and Recommendation.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 9, 2017                s/ Mona K. Majzoub
                                      MONA K. MAJZOUB
                                      UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: January 9, 2017                s/ Lisa C. Bartlett
                                      Case Manager